IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JAQUAN DAY, | * | |
| Petitioner, | * | Criminal Action No. RDB-19-0506 |
| v. | * | Civil No. RDB-22-1264 |
| UNITED STATES OF AMERICA, | * | |
| Respondent. | * | |

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

**MEMORANDUM OPINION**

On July 2, 2020, a federal grand jury issed a two-count Indictment charging Petitioner Jaquan Day ("Petitioner" or "Day") and five co-conspirators for their involvement in a robbery of an individual engaged in trafficking controlled substances. (Indictment 1-4, ECF No. 102.) On April 16, 2021, Petitioner pleaded guilty to one count of Hobbs Act Robbery in violation of 18 U.S.C. § 1951(a). (Rearraignment 1, ECF No. 150; Pet'r's Plea Ag't, ECF No. 146.) On May 27, 2021, this Court sentenced Day to 121 months imprisonment followed by three years of supervised release. (Judgment 2-3, ECF No. 178.)

Now pending is Day's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. (ECF No. 269.) In support of this motion, Petitioner alleges ineffective assistance of counsel, arguing that his defense attorney failed to properly advise him in connection with his plea agreement and to timely file an appeal. (*Id* at 2.) The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2021). For the following reasons, Petitioner's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (ECF No. 269) is **DENIED**.

1

## BACKGROUND

On April 25, 2019, Petitioner and at least seven other individuals conspired to interfere in interstate commerce by robbing an individual engaged in trafficking controlled substances. (Presentence Investigation R. ("PSR") ¶ 7, ECF No. 166.) On that date, Petitioner and his co-defendants invaded a home, and in the process of the robbery, Day kicked a pregnant woman in the stomach. (Pet'r's Plea Ag't 10–11, ECF No. 146.) An arrest warrant was issued on May 4, 2020, (ECF No. 3), and on July 7, 2020, a federal grand jury issued a two-count Superseding Indictment charging Petitioner and five co-conspirators with Hobbs Act Conspiracy and Hobbs Act Robbery, (*see* Indictment 1-4). After waiving the Indictment, Day pled guilty, with an agreed range of sentence, to Count One of the Superseding Criminal Information, charging him with Hobbs Act Robbery. (Waiver of Indictment 1, ECF No. 145; Superseding Info. 1-2, ECF No. 142; Pet'r's Plea Ag't.) All other charges were dismissed. (Judgment 2.)

Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), the parties agreed that a sentence between 108 and 135 months was an appropriate disposition of the case, and the defendant waived his right to appeal any sentence in that range. (PSR ¶ 3.) As part of the plea agreement, the parties specifically stipulated that there was no agreement as to Day's criminal history. (Pet'r's Plea Ag't. 5.) The advisory United States Sentencing Guidelines recommended an imprisonment range of 97 to 121 months, based on Petitioner's total offense level of 29 and criminal history category of II. (PSR ¶ 66.) This Court then concluded that the recommended guidelines range and the agreed range of sentencing pursuant to the plea agreement "meshe[d] very well" and sentenced Petitioner to 121 months imprisonment, followed by three years of supervised release. (Sentencing Hr'g Tr. 29:18, ECF No. 220;

Judgment 2-3.)

Despite his waiver of appeal, within six weeks of his sentencing, Day filed a Notice of Appeal alleging ineffective assistance of counsel. (Supp. to Pet'r's Mot. 7, ECF. No. 269-1.) However, Day failed to timely file and failed to obtain an extension of the appeal period with the United States Court of Appeals for the Fourth Circuit. Consequently, the Fourth Circuit dismissed his appeal after the Government sought enforcement of the relevant time limitation. Fed. R. App. P. 4(b); *see United States v. Day*, No. 21-4341, 2022 WL 1641277 (4th Cir. May 24, 2022). Thereafter, Day filed this Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 with his appellate briefs incorporated by reference. (*See* ECF No. 269.) This motion is now pending.

## STANDARD OF REVIEW

Under 28 U.S.C. § 2255, a prisoner in custody may move to vacate, set aside, or correct his sentence on four grounds: (1) "the sentence was imposed in violation of the Constitution or laws of the United States," (2) "the court was without jurisdiction to impose the sentence," (3) "the sentence was in excess of the maximum authorized by law," or (4) "the sentence 'is otherwise subjected to collateral attack.'" *Hill v. United States*, 368 U.S. 424, 426–27 (1962) (quoting 28 U.S.C. § 2255). "[A]n error of law does not provide a basis for collateral attack unless the claimed error constituted a 'fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (quoting *Hill*, 368 U.S. at 428). The scope of a § 2255 collateral attack is far narrower than an appeal, and "a collateral challenge may not do service for an appeal." *United States v. Frady*, 456 U.S. 152, 165 (1982).

3

## ANALYSIS

Through the instant motion, Petitioner argues that this Court should vacate his sentence because he received ineffective assistance of counsel during sentencing and on appeal. (Pet'r's Mot. 2.) Specifically, Petitioner argues that his trial attorney provided ineffective assistance by "(a) failing to advise [him] properly in connection with his plea . . .; (b) failing to timely file an appeal; and (c) through such other errors and omissions that were deficient and prejudicial . . . ." (*Id.*) For the reasons stated below, Day's argument fails.

A freestanding ineffective assistance of counsel claim may be properly asserted for the first time in a § 2255 motion. *United States v. DeFusco*, 949 F.2d 114, 120–21 (4th Cir. 1991). To set forth a Sixth Amendment claim for ineffective assistance of counsel, the petitioner must satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires the petitioner to show: (1) "that counsel's performance was deficient;" and (2) "that the deficient performance prejudiced the defense." 466 U.S. at 687. In applying *Strickland*, it is unnecessary to address both prongs if the petitioner makes "an insufficient showing on one." *Moore v. Hardee*, 723 F.3d 488, 500 (4th Cir. 2013) (quoting *Strickland*, 466 U.S. at 697). Thus, ineffective assistance of counsel claims may be denied solely on a deficiency in either the "performance" prong or the "prejudice" prong. *See Strickland*, 466 U.S. at 697.

## I.     Alleged Deficient Performance

Day fails to demonstrate that his attorney's performance was deficient at sentencing or on appeal. The "performance" prong requires a showing that counsel's representation fell below an "objective standard of reasonableness." *Strickland*, 466 U.S. at 687–88. In making this determination, this Court applies "a strong presumption that counsel's conduct falls within

the wide range of reasonable professional assistance." *Id.* at 689; *see Yarbrough v. Johnson*, 520 F.3d 329, 337 (4th Cir. 2008) (highlighting importance of avoiding "the distorting effects of hindsight" (quoting *Strickland*, 466 U.S. at 689)). Counsel's performance must be "evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of reasonableness is highly deferential." *United States v. Roane*, 378 F.3d 382, 404–05 (4th Cir. 2004) (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986)). Counsel also has a "duty to investigate and to research a client's case in a manner sufficient to support informed legal judgments." *United States v. Carthorne*, 878 F.3d 458, 466 (4th Cir. 2017) (citing *Winston v. Pearson*, 683 F.3d 489, 504 (4th Cir. 2012)).

In the instant case, Day alleges he was deprived of his Sixth Amendment rights because his counsel failed to mention the misalignment between the sentencing range agreed upon by the parties in Day's C-plea and the sentencing range he was prescribed by the advisory United States Sentencing Guidelines. (Supp. to Pet'r's Mot. 10.) Before sentencing, and without determining Day's criminal history category, the parties agreed that a 108- to 135-month sentence was an appropriate resolution to this case. (Pet'r's Plea Ag't.) According to Day, this range "track[ed] the range that would have applied if his criminal history had been Category III." (Supp. to Pet'r's Mot. 10.) However, Day's criminal history category was II at sentencing, which provided an advisory guidelines range of 97 to 121 months based on his offense. (PSR ¶ 66.) Day claims that his counsel provided ineffective assistance because he failed to mention this criminal history category misalignment either before or at sentencing. (Supp. to Pet'r's Mot. 10.) He claims that it was his trial counsel's duty to evaluate his criminal history in relation to the sentencing guidelines so he could properly consider the potential benefits of a plea

agreement and explain the consequences of taking a guilty plea. (*Id.*) Therefore, according to Petitioner, because counsel mischaracterized his criminal history category in his plea agreement and failed to address the discrepancy on the record either before or during sentencing, counsel did not properly advise him. (Supp. to Pet'r's Mot. 11.)

However, the record indicates that Day's trial counsel did, in fact, consider his criminal history to make strategic judgments during the plea bargaining process. Specifically, the parties submitted that there was "no agreement as to the Defendant's criminal history" in Day's plea agreement. (Pet'r's Plea Ag't 5.) Furthermore, correspondence between trial counsel and the Government contained sentencing estimates based on Day's projected criminal history category. (Supp to Gov't Resp. Opp. 1-3, ECF No. 296-1.) This suggests that trial counsel was considering Day's criminal history and did not merely accede to the Government's proposal. (Pet'r's Plea Ag't 5.) Counsel also advised Day during the sentencing process, negotiated a plea agreement on Day's behalf that eliminated the risk of severe sentencing based on the Government's position, and compiled a sentencing memorandum advocating for him. (Pet'r's Plea Ag't; Sentencing Mem., ECF No. 170.) Accordingly, counsel's assistance during plea negotiations "evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances" meets the "highly deferential standard of reasonableness" accorded to counsel's strategic decisions. *Roane*, 378 F.3d at 404–05 (quoting *Kimmelman*, 477 U.S. at 381).[1] Although counsel did not discuss the disparity in Day's criminal history category on the

---

[1] The record also indicates that counsel provided "reasonable professional assistance" by negotiating a plea agreement despite the Government's position regarding the appropriate charges and potential resulting sentence. *Strickland*, 466 U.S. at 687-88. In its Response in Opposition and Supplement to the Response, the Government indicates that it had considered further charging Day with brandishing a firearm during the offense at question, pursuant to 18 U.S.C. § 924(c)(1)(A)(ii).

record, such a failure does not situate counsel's performance outside of the "wide range of professional assistance" that is presumed adequate under the Sixth Amendment. *Strickland*, 466 U.S. at 689. Therefore, this "professional assistance" satisfies *Strickland* and is constitutionally adequate. 466 U.S. at 689.

Petitioner's assertion that counsel provided ineffective assistance by failing to correctly calculate his criminal history is also without merit because the variance between the C-plea range and the advisory guidelines range was minimal. Several Circuit Courts have held that significant miscalculations in the applicable guidelines or other similar principles are required before finding ineffective assistance of counsel. *United States v. Manzo*, 675 F.3d 1204, 1209 (9th Cir. 2012) (stating that a "gross mischaracterization of the likely outcome" would more likely result in a finding of ineffective assistance of counsel than "mere inaccurate prediction."); *United States v. Valdez*, 973 F.3d 396, 404 n.4 (5th Cir. 2020) ("[I]t is inconceivable that a Sixth Amendment violation occurs when counsel performs with anything less than mathematical precision."); *United States v. Parker*, 720 F.3d 781, 788 n.9 (10th Cir. 2013) ("A miscalculation or erroneous sentence estimation by defense counsel is not a constitutionally deficient performance arising to the level of ineffective assistance of counsel." (quoting *United States v. Gordon*, 4 F.3d 1567, 1570 (10th Cir.1993))). Accordingly, the weight of authority indicates that variances in sentencing calculations that are less than substantial do not give rise to valid ineffective assistance of counsel claims.

---

(Gov't Resp. Opp. 5; Supp. to Gov't Resp. Opp. 1.) According to the Government, this would have carried a statutory minimum of seven years' imprisonment consecutive to the sentence received under the Hobbs Act offenses. (Gov't Resp. Opp. 5.)

As previously stated, the parties agreed to a 108- to 135-month imprisonment range in the plea agreement, (Pet'r's Plea Ag't 5-6), while the applicable sentencing guidelines recommended a 97- to 121-month imprisonment range, (PSR ¶¶ 66-70). This variance is closer to "mathemical precision," *Valdez*, 973 F.3d at 404 n.4, than any error with the potential of reflecting a "gross mischaracterization of the likely outcome." *Manzo*, 675 F.3d at 1209. This overlapping range indicates that each party accurately approximated the potential sentence Petitioner could face under the sentencing guidelines. Indeed, the broad range of considerations available during the plea bargaining process—including potential additional charges by the Government[2], the sentences of Day's co-conspirators, and his criminal history—illustrate that the similarity in the two ranges was attributable to, at the very least, counsel's strategic bargaining decisions. *Strickland*, 466 U.S. at 687-88. This Court explicitly mentioned that the ranges "meshe[d] very well." (Sentencing Hr'g Tr. 29:18.) Specifically, this Court stated that it was satisfied that the sentence imposed was "at the high end of the advisory guideline range but the mid-range of the agreement the parties . . . reached." (*Id.* at 30:2-4.) Accordingly, counsel's assistance was not of the kind that would have a "major impact on the calculation of the discretionary guidelines." *Manzo*, 675 F.3d at 1209. Therefore, Petitioner has not shown that he received ineffective assistance from counsel for a failure to correctly calculate his criminal history category.

Day also alleges that his trial counsel provided ineffective assistance by "failing to timely file an appeal" and "through such other errors and omissions that were deficient and prejudicial, as may be developed through further evidence from Mr. Day and by any facts that

---

[2] *See supra* note 1.

may come to light in this proceeding." (Def.'s Mot 2.) Each ground is unavailing. Ineffective assistance of counsel for failure to file a notice of appeal generally depends on whether the defendant instructed counsel to file. *Roe v. Flores-Ortega*, 528 U.S. 470 (2000); *see e.g. Singleton v. Eagleton*, 425 F. App'x 228, 230 (4th Cir. 2011). If a defendant specifically instructs counsel to file a notice of appeal, their failure to do so is "professionally unreasonable" and *per se* ineffective. *Roe v. Flores-Ortega*, 528 U.S. at 477.

Alternatively, if a defendant does not provide instructions, counsel must "consult" with them if they have "reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id* at 480. "Consult," in these circumstances, requires that counsel "advis[es] the defendant about the advantages and disadvantages of taking an appeal, and mak[es] a reasonable effort to discover the defendant's wishes." *Id* at 478. In determining whether counsel had a duty to consult, a "highly determinative" factor is whether the conviction follows a guilty plea. *Id* at 480 ("[A] guilty plea . . . may indicate that the defendant seeks an end to judicial proceedings."). In connection with the plea, courts should also consider whether defendant received the sentence bargained for, among other potential factors. *Id.*

There is no indication in the record that Petitioner instructed counsel to file a notice of appeal within fourteen days of this Court's judgment. Judgment was entered on May 27, 2021. (Judgment.)[3] Therefore, Day was required to file a notice of appeal on or before June

---

[3] *United States v. Poindexter,* 492 F.3d 263 (4th Cir. 2007) is not implicated in this case. As stated above, there is no indication in the record that Petitioner unequivocally instructed his counsel to file a notice of appeal on his behalf. Additionally, Day waived his right to appeal as part of his plea

10, 2021. Fed. R. App. P. 4(b). It is during this period in which Day must have instructed his counsel to file a notice of appeal to properly demonstrate ineffective assistance of counsel for a failure to do so. However, the record reveals only that Petitioner submitted a notice of appeal, *pro se*, on July 1, 2021, weeks after the appeal period expired. (Pet'r's Notice of Appeal 2, ECF No. 208.) Moreover, his trial counsel submitted a notice of appeal on July 5, 2021, only four days later, to supplement Day's *pro se* notice. (Counsel's Notice of Appeal, ECF No. 203.) Nothing in the record suggests that Day informed his attorney of his intent to appeal before the appeal period expired or that his attorney acted unreasonably in failing to ascertain such an intent earlier. Accordingly, counsel was under no duty to file a notice of appeal based on Petitioner's instructions, and therefore was not ineffective for failing to do so. *Flores-Ortega*, 538 U.S. at 477.

Counsel also consulted with Petitioner even though he had no duty to do so, because he does not fall within the two circumstances described in *Flores-Ortega*.[4] 538 U.S. at 480. According to the Government, trial counsel informed them that their "standard practice is to ask clients immediately after sentencing whether the client wants to note an appeal" and that

---

agreement in this case and was specifically advised as to the consequences of this waiver at his guilty plea and sentencing (ECF No. 177). Accordingly, Day was not prejudiced when his counsel failed to file a notice of appeal within fourteen days of this Court's judgement. Furthermore, the absence of prejudice is illustrated in that Day was able to exercise his right to appeal when he untimely filed a *pro se* notice of appeal on July 1, 2021. (Pet'r's Notice of Appeal 2.) Although the Fourth Circuit dismissed his appeal as untimely, his appeal was heard despite him never asking counsel to file during the required period.

[4] Counsel would not have had reason to think that Day "(1) . . . would want to appeal . . ., or (2) reasonably demonstrated . . . that he was interested in appealing." *Flores-Ortega*, 538 at 480. As mentioned in *Flores-Ortega*, when a defendant pleads guilty and receives a sentence in line with their plea agreement, it may indicate that the defendant was not interested in appealing. *Id.* In this case, Petitioner pled guilty and received a sentence within the agreed range. Accordingly, had counsel not consulted with Petitioner, he likely still provided effective assistance in relation to filing a notice of appeal.

"[a]t the time of sentencing, trial counsel and Mr. Day agreed there was no issue or need for an appeal." (Gov't Resp. in Opp. 19, ECF No. 269.) Furthermore, Day's subsequent *pro se* notice of appeal filed on July 1, 2021, cannot be construed as an "interest[] in appealing" for the purposes of *Flores-Ortega* because it was long after the period in which he could have appealed. 528 U.S. at 480. Therefore, the record fails to reveal an instance on or before July 1, 2021, in which Day expressed an interest in appealing. Consequently, absent any other indication in the record, this illustrates that counsel consulted with Petitioner even though he was under no duty to.

Finally, this Court cannot determine whether counsel, in fact, provided ineffective assistance with regard to the "other errors and omissions" alleged by Petitioner because he has provided no information regarding any other putative deficiencies in counsel's performance. Therefore, for the above reasons, Day has failed to satisfy the "performance" prong. Alternatively, for the reasons that follow, this Court finds that Day also has failed to meet his burden under the "prejudice" prong.

## II.    Prejudice

The "prejudice" prong requires the petitioner to demonstrate that counsel's alleged errors deprived him of a fair trial. *Strickland*, 466 U.S. at 687. "To satisfy the second prong, a petitioner must show that 'there is a reasonable probability that, but for counsel's [alleged] errors, the result of the proceeding would have been different.'" *Mahdi v. Stirling*, 20 F.4th 846, 894 (4th Cir. 2021) (quoting *Strickland*, 466 U.S. at 694). More importantly, a petitioner faces a greater burden when he alleges ineffective assistance of counsel after a guilty plea has been entered. *Hooper v. Garraghty*, 845 F.2d 471, 475 (4th Cir. 1988). In such a case, petitioner "must

show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). This is "an objective inquiry," dependent on the "likely outcome of a trial had the defendant not pleaded guilty." *Meyer v. Branker*, 506 F.3d 358, 469 (4th Cir. 2007) (citing *Garraghty*, 845 F.2d at 475, and *Hill*, 474 U.S. at 59–60).

Day asserts that counsel's deficient conduct caused prejudice because it deprived him of his ability to enter into a plea agreement within a particular range. (Supp. to Pet'r's Mot 11.) However, Day provides no further information as to whether this conduct created a "reasonable probability that . . . the result of the proceeding would have been different.'" *Mahdi*, 20 F.4th at 894 (quoting *Strickland*, 466 U.S. at 694). Particularly, Petitioner fails to show that the alleged mischaracterization of his criminal history category created a reasonable probability that he would have gone to trial, as required in the plea-bargaining context. *Garraghty*, 845 F.2d at 475 (quoting *Hill*, 474 U.S. at 59). Nor does he provide any information or argument as to the likely outcome of a potential trial. *Meyer*, 506 F.3d at 469. Comparatively, the Government correctly notes that a reasonable person in Petitioner's position would likely not choose a trial over a similar plea agreement, given the potential for a mandatory seven-year consecutive sentence as to Count II alone. (Gov't Resp. in Opp. 16.) Moreover, Day's behavior while committing the offense, if subject to potential interpretation by a jury, could have resulted in a much more severe sentence. (*Id.*)

Consequently, Day has failed to show that but-for the misalignment between his C-plea sentencing range and his advisory sentencing guidelines range resulting from counsel's mischaracterization of his criminal history category, he would have proceeded to trial. *Cf.*

*Garraghty*, 845 F.2d at 475. He therefore fails to meet the heightened burden to show "prejudice" imposed on individuals who pleaded guilty to their offense. Accordingly, Day fails to show how counsel's alleged deficiencies prejudiced him at sentencing or on appeal. As Petitioner can establish neither "deficient performance" nor "prejudice," his ineffective assistance claim fails, and his Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (ECF No. 269) is hereby **DENIED.**

## CONCLUSION

For the foregoing reasons, Petitioner's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (ECF No. 269) is **DENIED**.

Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. § 2255, this Court is required to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability is a "jurisdictional prerequisite" to an appeal from the court's earlier order. *United States v. Hadden*, 475 F.3d 652, 659 (4th Cir. 2007). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where the court denies a petitioner's motion on its merits, a petitioner satisfies this standard by demonstrating that reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong. *See Miller-El v. Cockrell*, 537 U.S. 322, 336–38 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because reasonable jurists would not find Petitioner's claims debatable, a certificate of appealability is **DENIED**.

A separate Order follows.

13

Dated:          March 14, 2023

                                                _____/s/_____
                                                Richard D. Bennett
                                                United States Senior District Judge