IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | Criminal Action No. RDB-19-506 |
| JAQUAN DAY, | * | |
| *Defendant.* | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

### MEMORANDUM ORDER

This case comes to the Court on Defendant Jaquan Day's pro se Motion to Reduce Sentence (ECF No. 302) and the Office of the Federal Public Defender's Supplemental Motion to Reduce Sentence (ECF No. 314) wherein Day moves to reduce his sentence pursuant to Amendment 821 to the United States Sentencing Guidelines. Concluding that he is eligible for a sentence reduction, the Court GRANTS his Motions to Reduce Sentence (ECF No. 302; ECF No. 314), and his total term of incarceration is reduced to 108 months (9 years).

### BACKGROUND

On April 16, 2021, Day pled guilty to one count of Hobbs Act Robbery in violation of 18 U.S.C. § 1951(a). Per his plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C),[1] Day stipulated that, on April 25, 2019, he conspired with at least seven other individuals to interfere in interstate commerce by robbing an individual engaged in trafficking controlled substances. (ECF No. 146 at 10) On that date, Day and four of his co-defendants

---

[1] In a Rule 11(c)(1)(C) plea agreement, the defendant agrees to plead guilty or no contest to a charged or lesser offense, and the government's attorney agrees to a specific sentence or sentencing range. Fed. R. Crim. P. 11(c)(1)(C). Once the court accepts the plea agreement, the government's recommendation is binding. *Id.*

1

invaded the home of three people. (*Id.*) While Day pointed a gun at two of the residents—a woman eight-months pregnant and her son—the other defendants physically restrained the third person and demanded money. (*Id.*) When the woman attempted to intervene, Day kicked her in the abdomen and struck her legs with his gun. (*Id.*) After Day and his co-defendants fled the scene, the woman was rushed to the hospital for an emergency Caesarian section to deliver her child. (*Id.*)

Under the plea agreement, the parties stipulated and agreed to a sentence of 108–135 months' imprisonment. (*Id.* at 5–6) The parties did not form an agreement, however, on the Defendant's criminal history. (*Id.* at 5) Day's Sentencing Guideline range was 97–121 months' imprisonment, based on an offensive level of 29 and a criminal history category of II. (ECF No. 166 ¶ 66) Day received a criminal history category of II because he was assigned three total criminal history points: one point for an earlier car theft that resulted in probation before judgment, and two "status points" from U.S.S.G. § 4A1.1, which assigned him two points for committing Hobbs Act Robbery while on probation for the car theft. (*Id.*); *see* U.S.S.G. § 4A1.1(d) (2016) (adding two criminal history "status points" for offenses committed "while under any criminal justice sentence, including probation . . . ."). Day sought a sentence of 108 months' incarceration; the Government requested at least 120 months' incarceration. (ECF No. 170 at 1; ECF No. 171 at 1) On May 27, 2021, this Court sentenced Day to 121 months' incarceration (just over ten years) with credit for time served in federal custody since May 6, 2020. (ECF No. 178)

Day appealed that sentence on July 5, 2021. (ECF No. 203) The United States Court of Appeals for the Fourth Circuit denied Day's appeal as untimely filed on May 24, 2022.

2

*United States v. Day*, No. 21-4341, 2022 U.S. App. LEXIS 14442, at *1–2 (4th Cir. May 24, 2022); (ECF No. 268) Day subsequently filed a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 alleging ineffective assistance of trial counsel. (ECF No. 269) This Court denied that Motion in a Memorandum Opinion and Order dated March 14, 2023. (ECF Nos. 299, 300)

Day is now 25 years old and is presently incarcerated at Pollock USP in Pollock, Louisiana, with a projected release date of September 8, 2028. *See Find an Inmate*, FEDERAL BUREAU OF PRISONS, available at https://www.bop.gov/inmateloc/ (search by register number: 65391-037) (last accessed Oct. 2, 2025). On December 13, 2023, Day mailed a letter—construed as a pro se Motion to Reduce Sentence—inquiring whether Amendment 821 affects his sentence category. (ECF No. 302 at 1) On August 9, 2024, the Office of the Federal Public Defender supplemented Day's Motion arguing that Part A of Amendment 821 entitles Day to a sentence reduction. (ECF No. 314) On September 9, 2024, the United States filed its response opposing Defendant's motion to reduce sentence. (ECF No. 318) The Office of the Federal Public Defender filed its reply on September 12, 2024. (ECF No. 319) The parties' submissions have been reviewed and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025).

## STANDARD OF REVIEW

Initially, Defendant filed his Motion pro se. (ECF No. 302) The Court construes pro se motions liberally and holds them to "less stringent standards than formal pleadings drafted by lawyers.*" Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted). This Court notes that Day ultimately was ably represented by the Office of the Federal Public Defender.

Ordinarily, a federal court may not "modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). This "rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). Relevant here, 18 U.S.C. § 3582(c)(2) permits a court to reduce the sentence of a defendant whose sentence was "based on a sentencing range that has subsequently been lowered by the Sentencing Commission" and when such a reduction is consistent with the sentencing factors in § 3553(a) and the Sentencing Guidelines.

Congress gave the Sentencing Commission a "substantial role" in determining the appropriate sentencing ranges for criminal cases. *See Dillon v. United States*, 560 U.S. 817, 826 (2010). As part of its duties, the Commission must "review and revise" its guidelines and promulgate amendments as necessary. 28 U.S.C. § 994(o). The Commission also determines "whether and to what extent an amendment will be retroactive." *Dillon*, 560 U.S. at 826 (citing § 994(u)). "A court's power [to reduce a term of imprisonment] under § 3582(c)(2) thus depends in the first instance on the Commission's decision not just to amend the Guidelines but to make the amendment retroactive." *Id.*

Day seeks a reduction in sentence pursuant to Amendment 821 to the Guidelines. The Commission made Amendment 821 retroactive. *See* U.S.S.G. § 1B1.10(d).[2] Though Amendment 821 is a multi-part amendment, at a high-level it can be separated into Parts A and B. Part A amends U.S.S.G. § 4A1.1 and limits the imposition of "status points" on a

---

[2] The Commission excludes reductions in terms of imprisonment if the amendment providing relief is not listed in subsection (d) or "does not have the effect of lowering the defendant's applicable guidelines range." U.S.S.G. § 1B1.10(a)(2). Part A of Amendment 821 is listed in subsection (d). *See* U.S.S.G. § 1B1.10(d).

defendant's criminal history calculation.³ For defendants sentenced before the amendment, Part A instructs courts: (1) to remove one status point for individuals with seven or more criminal history points, and (2) to eliminate status points for those with six or less criminal history points. *See* U.S.S.G. § 4A1.1(e). Part B deals with zero-point offenders and amends § 4C1.1. It provides zero-point offenders—that is, criminal defendants with no criminal history points—a mechanism to obtain a two-level reduction of their offense level. *See* U.S.S.G. § 4C1.1; *see also United States v. Barrett*, 133 F.4th 20, 287 (4th Cir. 2025) ("[A] defendant's criminal history category and her offense level are separate calculations under the Guidelines, serving separate purposes" and "a retroactive change to one ordinarily will not affect the other."). A defendant may move for relief under either Part A or Part B, or both.

## ANALYSIS

### I.   Whether Amendment 821 Would Provide Relief to Day

Day filed a Motion to Reduce Sentence, pursuant to 18 U.S.C. § 3582(c)(2) and Amendment 821, upon the grounds that he is eligible for a reduction in his criminal history score under Part A of Amendment 821. (ECF Nos. 302, 314-1); (ECF No. 319 at 1 n.1) Based on the retroactive application of Part A of Amendment 821, Day argues that two status points should be eliminated and that his criminal history category should be reduced. (ECF No. 314 at 2–3) Day does not rely on Part B in his Motion.

While the Government concedes that Day "may be eligible for a sentence reduction" under Part A (ECF No. 318 at 7), it also argues that Day is ineligible for a sentence reduction

---

³ "Status points" are added to a defendant's criminal history score when that defendant committed the current offense "while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." U.S.S.G. § 4A1.1(e).

5

under Part B of Amendment 821. (*Id.* at 5–7) The Court does not need to evaluate Day's eligibility for a sentence reduction under Part B because Day does not seek relief under Part B.  He seeks relief exclusively under Part A, which amends U.S.S.G. § 4A1.1.

For a criminal defendant to be eligible for relief based on amendments to his sentencing guideline range, (1) the Sentencing Commission must apply the Amendment retroactively; and (2) the defendant's sentence reduction must be consistent with the Commission's applicable policy statements. *See* U.S.S.G. § 1B1.10. In this case, the Commission gave Part A of Amendment 821 retroactive effect and instructed courts to issue reduced terms of imprisonment when "the effective date of the court's order is February 1, 2024, or later." U.S.S.G. §§ 1B1.10(d), (e)(2). This instruction does not limit the court's authority to apply Part A retroactively to reduce a defendant's sentence; instead, this instruction only "*delays the effective date* of orders reducing a defendant's term of imprisonment to a date no earlier than February 1, 2024." U.S.S.G. § 1B1.10 cmt. n. 7 (emphasis added). The Commission's policy statements specify that defendants are not eligible for a sentence reduction if the retroactive amendment "does not have the effect of lowering the defendant's applicable guidelines range." U.S.S.G. § 1B1.10(a)(2)(B); *see United States v. Nickens*, 668 F. App'x 20, 21 (4th Cir. 2016) (per curiam) (finding defendant not eligible for a sentence reduction under § 3582(c)(2) because Amendment did not lower his applicable guidelines range).

Day is entitled to a sentence reduction because Part A eliminates two criminal history points that he received at sentencing. When Day's sentence guidelines were calculated, he received one criminal history point for a car theft committed at the age of 18, and two additional status points for committing an offense while serving a term of probation for that

6

car theft. (ECF No. 166 ¶ 66); *see* U.S.S.G. § 4A1.1(d) (2016) (adding two criminal history points for offenses committed "while under any criminal justice sentence, including probation[]"). Under the current § 4A1.1, as modified and given retroactive effect by Amendment 821, Day must "receive[] 7 or more [criminal history] points" *and* "[have] committed the [Hobbs Act robbery] while under any criminal justice sentence" to receive one status point to his criminal history score under § 4A1.1(e). U.S.S.G. § 4A1.1(e). Day received one point under subsection (c) for his earlier car theft. (ECF No. 166 ¶ 66); *see* U.S.S.G. § 4A1.1(c) (adding one point "for each prior sentence not counted in subsection (a)," which adds criminal history points for sentences of imprisonment exceeding one year and one month). Although Day committed Hobbs Act Robbery while under a term of probation for that car theft, his criminal history score reflects only one criminal history point, far short of the "seven or more" criminal history points required for a defendant to receive a status point. *See* U.S.S.G. § 4A1.1(e). Therefore, Day's criminal history category must be recalculated without those two additional status points.

By eliminating two status points, Day's criminal history category is reduced to level I, altering his applicable guidelines range. At sentencing, Day received a total offense level of 29 and a criminal history category of II. The Sentencing Guidelines provided a sentence of 97–121 months. (ECF No. 166 ¶ 66); *see* U.S.S.G. Ch. 5, Pt. A. By eliminating two criminal history points, Day would be placed in criminal history category I. Using this lower criminal history category and the same offense level of 29, the Sentencing Guidelines now recommend an amended guideline range of 87–108 months. *See* U.S.S.G. Ch. 5, Pt. A. Since Amendment 821 has the effect of lowering Day's recommended guidelines range, Day's sentence reduction is

7

consistent with applicable policy statements. *See* U.S.S.G. § 1B1.10; *see also United States v. Wedlock*, No. LKG-16-00267, 2025 U.S. Dist. LEXIS 131696, at *9–12 (D. Md. July 11, 2025) (finding defendant ineligible for a sentence reduction under Part A because defendant's "criminal history category does not change when Amendment 821 is applied" because defendant's criminal history category was determined by his "career offender status"). Day is therefore eligible for a sentence reduction under Part A of Amendment 821.

## II.   The 3553(a) Factors

Although Day is eligible for a sentence reduction under Part A, he must also demonstrate that his sentence reduction is consistent with the sentencing factors in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(2); *Dillon*, 560 U.S. at 822. These factors require this Court to consider, as relevant here: (1) defendant's personal history and characteristics; (2) his sentence relative to the nature and seriousness of his offense; (3) the need for a sentence to provide just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, and protect the public; (4) the need for rehabilitative services; (5) the applicable guideline range; and (6) the need to avoid unwarranted sentencing disparities among similarly situated defendants. 18 U.S.C. § 3553(a).

The Office of Federal Public Defender urges this Court to reduce Day's 121-month sentence to a 96-month sentence[4] based on Day's mental health challenges, youth, minimal criminal record, strong rehabilitative efforts, and drug abuse treatment. (ECF No. 314 at 3–5) The Federal Public Defender emphasizes that Day faced "emotional[] and physical[] abuse"

---

[4] As discussed above, Day's amended guideline range is 87–108 months. A 96-month sentence is around the middle of the recommended range.

8

from a young age and struggled with homelessness and drug abuse early in life. (*Id.* at 4) The Federal Public Defender then argues that, since Day committed this offense when he was nineteen years old, he possessed a "lack of maturity," an "underdeveloped sense of responsibility," a "susceptib[ility] to negative influences and outside pressures," and a developing character that make him suitable for rehabilitation. (*Id.*) The Federal Public Defender supplements this argument by citing Day's rehabilitative record, including completion of a GED program, residential drug abuse program, and evidence-based recidivism reduction programs. (*Id.* at 5)

The Government, meanwhile, argues that the § 3553(a) factors weigh against Day because his offense was "violent in nature with firearms brandished by Day" and deterrence and respect for the law require Day to serve his full sentence. (ECF No. 318 at 7–8) The Government also argues that Day bargained for his current sentence by accepting a Rule 11(c)(1)(C) plea agreement and does not present any new information that should alter this court's original sentence. (*Id.* at 8–9) Finally, the Government argues that Day's record of prison conduct is not "blemish-free" based on three separate incidents in December 2021, April 2023, and December 2023. (*Id.* at 9); *see* (ECF No. 318-1). Accordingly, the Government argues that this Court should deny Day's Motion to Reduce Sentence. (*Id.*)

On balance, the § 3553(a) factors weigh in favor of reducing Day's sentence. However, that reduction should not be below the stipulated range agreed upon pursuant to Rule 11(c)(1)(C). First, Day's history and characteristics reveal a history of emotional and physical abuse that support a sentence reduction. In weighing a defendant's personal history and characteristics, Judge Bredar of this Court considered whether the defendant's "upbringing

[was] defined by trauma, neglect, or deprivation, which might offer some form of mitigating explanation for his choices." *United States v. Belzner*, JKB-12-103, 2024 U.S. Dist. LEXIS 89617, at *5 (D. Md. May 17, 2024). In *Belzner*, this factor weighed against a sentence reduction because the defendant was "[a]t best" a "'serial deadbeat'" who lacked such an upbringing. *Id.* Nonetheless, Judge Bredar granted the defendant's Motion to Reduce Sentence based on the weight of the other factors. *Id.* at *5–9 (weighing other factors and granting defendant's Motion). In this case, Day was diagnosed at a young age with Attention Deficit Hyperactivity Disorder and Bipolar Disorder and Depression. (ECF No. 314 at 4) These disorders went untreated after Day attained the age of fifteen. (*Id.*) Compiled with the "emotional[] and physical[] abuse[]" Day suffered from his mother's boyfriends, Day endured an upbringing characterized by trauma and deprivation that "offer[s] some form of mitigating explanation for his choices." *Belzner*, 2024 U.S. Dist. LEXIS 89617, at *5. The Government argues that, because this Court previously recognized Day's "mental health history abuse as a teenager" at sentencing (ECF No. at 30), none of these facts "change[] the calculus" of the Court's original sentencing decision (ECF No. 318 at 8–9). The Court is not, however, precluded from weighing Day's personal history and characteristics differently in the context of an 18 U.S.C. § 3582(c)(2) Motion to Reduce Sentence than at the original sentencing. *See United States v. Kibble*, 992 F.3d 326, 331 n.3 (4th Cir. 2021) (interpreting § 3582(c)(1)'s instruction to district courts to "consider[]" the relevant § 3553(a) factors as "procedural guardrails" on the court's discretion, not a "substantive prerequisite"). Thus, the Court considers Day's personal history and characteristics as supporting a sentence reduction.

10

Second, Day's offense involves a crime of violence against a pregnant woman with a gun, weighing against a reduced sentence. Offenses involving violence and firearms militate against a sentence reduction. *See United States v. Holton*, RDB-08-0553, 2025 U.S. Dist. LEXIS 214698, at *17–18 (D. Md. Nov. 25, 2024) (defendant's extensive criminal history and attempt to shoot a police officer weigh against sentence reduction); *United States v. Young*, No. LKG-07-00229, 2024 U.S. Dist. LEXIS 180151, at *10 (D. Md. Oct. 2, 2024) (defendant planned and executed an armed bank robbery and committed multiple other armed robberies, weighing against sentence reduction); *United States v. Martin*, RDB-04-0027, 2021 U.S. Dist. LEXIS 139791, at *7–8 (D. Md. July 27, 2021) (defendant's conspiracy to distribute large quantities of drugs and participation in a violent racketeering conspiracy weigh against sentence reduction). Offenses that are non-violent or lack the use of firearms, therefore, weigh in favor of granting a sentence reduction. *See United States v. Smith*, JKB-12-479, 2021 U.S. Dist. LEXIS 30932, at *9 (D. Md. Feb. 21, 2024) (defendant did not use violence or possess any guns when committing drug crimes, weighing in favor of sentence reduction); *Belzner*, 2024 U.S. Dist. LEXIS 89617, at *4–5 (defendant's theft of $20 million is "indisputably nonviolent" and "somewhat mitigate[es] [the] relative seriousness" of his offense, weighing in favor of sentence reduction). In this case, Day stipulated that he possessed a gun while participating in a robbery with his co-defendants. (ECF No. 146 at 10) Day further stipulated that he aimed his gun at a pregnant woman, kicked her in the abdomen, and struck her with his gun. (*Id.*) As this Court earlier recognized, "[t]here's no question about the level of violence that was involved here." (ECF No. 220 at 27) This Court was therefore satisfied that Day would be sentenced "at the high end of his advisory guidelines based upon his conduct." (*Id.* at 29) The Federal Public

11

Defender argues that a reduced 96-month sentence is still sufficiently punitive to account for the seriousness of Day's conduct. (ECF No. 314 at 3–4) The Federal Public Defender relies on the fact that Day's initial guidelines range "already incorporate[d] both the firearm and injury" by adding nine levels to his offense level. (*Id.* at 3 n.3) While a district court's consideration of the § 3553(a) in a sentencing calculus necessarily involves "many case-specific facts," *United States v. Jackson*, 952 F.3d 492, 500 (4th Cir. 2020), the court generally "respect[s] the terms [of a plea agreement] absent compelling circumstances," *United States v. Bond*, 56 F.4th 381, 384 (4th Cir. 2023). The Federal Public Defender's suggestion that the original "enhancements" for the brandished gun and the victim's serious bodily injury warrant a greater sentence reduction at this stage is beyond the scope of the relief provided by Part A and would disturb the parties' original calculations about the nature and seriousness of Day's offense. (ECF No. 314 at 3 n.3); *see also* (ECF No. 220 at 13–14). Considering that Day committed a serious crime of violence against a pregnant woman with a firearm, the Court finds that this factor weighs against granting Day a sentence reduction.

Third, Day's current sentence is not necessary to provide just punishment, promote respect for the law, and to deter criminal conduct because Day is unlikely to return to criminal conduct and has limited infractions during incarceration, weighing in favor of granting a sentence reduction. A sentence that provides just punishment and promotes respect for the law weighs against sentence reduction when the criminal defendant appears prone to recidivism, engaged in violent organized crime, or is frequently sanctioned by correctional authorities for infractions while incarcerated. *See United States v. Spann*, RDB-06-0179, 2021 U.S. Dist. LEXIS 216603, at *8–9 (D. Md. Nov. 9, 2021) (defendant was involved in an

12

organized murder-for-hire plot and is prone to recidivism based on his long criminal record, weighing against sentence reduction). *But see Martin*, 2021 U.S. Dist. LEXIS 139791, at *9–11 (defendant's extensive recidivist past is balanced by his limited criminal role in the drug distribution and racketeering offenses, his forty-three years of age, and his likelihood of returning to positive family influences, weighing in favor of sentence reduction); *Smith*, 2024 U.S. Dist. LEXIS 30932, at *10–11 (defendant's involvement with organized crime is mitigated by his lack of violence and positive disciplinary record from the Bureau of Prisons, weighing in favor of sentence reduction). Although Day committed the instant violent offense with at least seven other perpetrators, he demonstrates a clean disciplinary record from the Bureau of Prisons (BOP) and is unlikely to return to criminal conduct. *See* (ECF No. 314-2); (ECF No. 318-1). The Government argues that Day's four and half years in federal custody have "not been blemish-free" based on three separate incidents where defendant possessed a dangerous weapon and assaulted another without serious injury, was absent from an assignment, and threatened an officer with bodily harm. (ECF No. 318 at 9) But these infractions do not persuade the Court that this factor weighs against a sentence reduction. The most serious infraction—the assault without serious injury—occurred in December 2021, nearly four years ago and while Day was "adjusting to his first-ever period of incarceration." (ECF No. 319 at 3 n.2); *see* (ECF No. 318-1). Notwithstanding two subsequent infractions that resulted in twenty-one days of lost good-conduct time (ECF No. 319 at 3 n.2), the BOP still reports that Day's "[a]djustment and demeanor toward[] staff are good." (ECF No. 314-2) Moreover, in a letter mailed to this Court, Day expresses regret that his "reactionary" conduct "ha[s] not been perfect" while in prison and that he is "learning and pushing to be better" despite the

13

challenges of incarceration. (ECF No. 350 at 1–2) And, in a separate letter, Day describes his ongoing efforts to repair family ties and plan a fresh start upon his return home so he can "enjoy a new life, [and] experience parenthood and family life." (ECF No. 321 at 2) Day's articulated desire to avoid returning to a life of crime, the absence of an extensive criminal history, and his mostly clean disciplinary record while incarcerated all favor granting a sentence reduction.

Fourth, Day's demonstrated commitment to rehabilitation while incarcerated weighs in favor of granting a sentence reduction. Post-sentencing rehabilitation is "highly relevant" to the § 3553(a) sentencing analysis and weighs in favor of a sentence reduction where defendant regularly pursues rehabilitative services. *Pepper v. United States*, 562 U.S. 476, 492 (2011); *see also Holton*, 2024 U.S. Dist. LEXIS 214693, at *17 (defendant's excellent behavior while incarcerated, participation in numerous rehabilitative and educational programs, and consistent employment weigh in favor of sentence reduction); *Belzner*, 2024 U.S. Dist. LEXIS 89617, at *5–6 (defendant's "flawless" disciplinary record, completion of drug abuse treatment programs, and assistance to new program participants weigh in favor of sentence reduction). In this case, Day has pursued numerous opportunities for self-improvement in only four and a half years of federal custody. Day has pursued his GED, enrolled in drug abuse and mental health treatment programs (including the intensive "Challenge Program"), and maintained consistent employment. (ECF No. 314 at 5); (ECF No. 319 at 2) The Government concedes that Day "has made some strides . . . towards rehabilitation," but disputes the strength of his rehabilitative record based on two minor disciplinary infractions and one other infraction from nearly four years ago. (ECF No. 318 at 9); *see* (ECF No. 318-1). These incidents do not

14

persuade the Court that Day's rehabilitative efforts have been unsuccessful. Day's commitment to rehabilitation persists in his letters to this Court, where he asks for greater opportunities to participate in "a rehabilitative program for mental, emotional, and substance abuse." (ECF No. 323 at 2) Accordingly, Day's rehabilitative efforts weigh in favor of granting a sentence reduction.

Next, the applicable guidelines range as modified by Part A supports a sentence reduction. Day was sentenced to 121 months' imprisonment (ECF No. 178) after the Sentencing Guidelines recommended a sentence between 91–121 months (ECF No. 166 ¶ 66 at 8). Based on this guidelines range, this Court determined that an appropriate sentence would be "at the high end of [Day's] advisory guidelines." (ECF No. 220 at 29) Amendment 821 modified the sentence range applicable to Day by eliminating two status points from his criminal history score. The Guidelines now recommend a sentence between 87–108 months (ECF No. 314-2), which places Day's current sentence thirteen months above the Guidelines' recommendation. Amendment 821 therefore supports a reduction in Day's sentence.

Finally, Day's term of imprisonment does not reflect an unwarranted sentencing disparity because his violent conduct makes him exceedingly more culpable than his co-defendants, weighing against a reduced sentence. The "primary purpose" of this factor is "'eliminate unwarranted sentencing disparities *nationwide*'" among similarly situated defendants. *United States v. Lawson*, 128 F.4th 243, 256 (4th Cir. 2025) (quoting *United States v. Withers*, 100 F.3d 1142, 1149 (4th Cir. 1996) (emphasis added)). Despite this instruction to examine nationwide sentencing, this Court considers the "[m]ost important" aspect of the disparity issue are the "circumstances of the co[-]defendants," meaning their criminal conduct

15

and resulting criminal sentences. *United States v. Richardson*, No. JKB-09-0288, 2025 U.S. Dist. LEXIS 147735, at *11–12 (D. Md. July 31, 2025) (sentencing disparity between life imprisonment and 288 months' imprisonment is not unwarranted where co-defendants are "meaningfully distinct" because they "accepted responsibility and pled guilty" and were not directly implicated in the victim's death, weighing against sentence reduction); *United States v. Gary*, No. JKB-08-0086, 2025 U.S. Dist. LEXIS 180707, at * 5–6 (D. Md. Sep. 15, 2025) (forty-month sentencing disparity is not unwarranted where defendant provides no factual allegations that co-defendants are "similarly situated," weighing against sentence reduction); *Young*, 2024 U.S. Dist. LEXIS 180151, at *7–9, *12–13 (144-month sentencing disparity with the second longest sentenced is unwarranted where defendant established "extraordinary and compelling circumstances" for relief based on his "unusually long sentence," weighing in favor of sentence reduction). In this case, Day was sentenced to 121 months' (or just over ten years') imprisonment. (ECF No. 220 at 30) The second longest sentence imposed was for 78 months' (or six and a half years') imprisonment—forty-three months shorter than Day's sentence. (ECF No. 259)[5] The Federal Public Defender argues that these forty-three months make Day's sentence "far longer" than is warranted based upon the seriousness of Day's offense. (ECF No. 314 at 3–4) The Court, however, does not consider the sentencing disparity between Day

---

[5] The following sentences were imposed upon Day's co-defendants:

>Tyqwell Booker received 60 months' imprisonment (ECF No. 248);
>Stephen Johnson received 45 months' imprisonment (ECF No. 291);
>Antoine Rich received 72 months' imprisonment (ECF No. 128);
>Cameron Spicer received 78 months' imprisonment (ECF No. 259);
>Jessie Walton, Jr. received 30 months' imprisonment (ECF No. 164);
>Jawuan Bolling received 48 months' imprisonment (ECF No. 226).

and one his co-defendants to be unwarranted by itself. While this Court found an unwarranted sentencing disparity based solely on differential sentences in *Young*, the defendant there proved that his "unusually long sentence" was an "extraordinary and compelling reason" that independently met the standard for compassionate release. 2024 U.S. Dist. LEXIS 180151, at *7–9. In this case, Day's forty-three-month discrepancy is not an "extraordinary and compelling reason" for a sentence reduction by itself.

While the Federal Public Defender does not rely on additional factual allegations beyond the sentencing disparity, *see* (ECF No. 319 at 2), this Court has previously considered the similarities between co-defendants' criminal conduct and procedural history, *see Richardson*, 2025 U.S. Dist. LEXIS 147735, at *11–12. In this case, Day and the majority of his co-defendants each accepted Rule 11(c)(1)(C) plea agreements.[6] *See United States v. Moore*, No. ELH-04-0190, 2025 U.S. Dist. LEXIS 28924, at *50–52 (D. Md. Feb. 18, 2025) (finding defendant not similarly situated to other defendants with lesser sentences who "pleaded guilty, sparing the government, the court, the public, and witnesses the burden of a trial"). Despite these procedural similarities, this Court still finds that Day is not similarly situated to his co-defendants based on his egregious conduct—wielding a gun and "kicking [a] pregnant woman"—that "clearly places him in a category above his co[-]defendants here." (ECF No. 220 at 29) Like in *Richardson*, where the defendant was implicated in criminal conduct that exceeded that of his co-defendants, 2025 U.S. Dist. LEXIS 147735, at *12, in this case, Day's

---

[6] For Stephen Johnson, see (ECF No. 200). For Antoine Rich, see (ECF No. 111). For Cameron Spicer, see (ECF No. 193). For Jessie Walton, Jr., see (ECF No. 139). For Jawuan Bolling, see (ECF No. 184). For Jaquan Day, see (ECF No. 146). While Tyqwell Booker did not agree to a Rule 11(c)(1)(C) plea agreement, he still avoided trial by pleading guilty to one count of Hobbs Act Robbery. *See* (ECF No. 248).

conduct far exceeds the level of violence exhibited by his co-defendants, *see* (ECF No. 220 at 29). At sentencing, this Court agreed that 121 months' imprisonment would not create "too great a sentencing disparity" between Day and his co-defendants. (*Id.*) This Court agrees with that assessment and therefore finds that the disparity in sentences is not unwarranted given Day's level of violent conduct as compared with his co-defendants.

In sum, the § 3553(a) factors weigh in favor of granting Day a reduced sentence because (1) his personal history and characteristics reflect a history of physical and emotional abuse; (2) he is unlikely to repeat his criminal conduct based on his disciplinary record and efforts to prepare himself upon release; (3) he demonstrates exceptional commitment to numerous rehabilitative programs; and (4) Part A reduced his applicable guidelines range to a level below his current sentence. Although Day also (1) committed a serious and violent crime with a gun, and (2) did not receive a disparate sentence based on his criminal conduct—both of which weigh against granting a sentence reduction—this Court ultimately finds that the § 3553(a) factors weigh in Day's favor and grants Day's Motion to Reduce Sentence (ECF No. 302) and the Federal Public Defender's Supplemental Motion to Reduce Sentence (ECF No. 314).

The extent of this reduction is within the constraints of the original guilty plea in April 2021. The agreement entered into by the Defendant and the Government carries great weight with this Court. The initial stipulation of a range of 108–135 months was appropriate, and both the Defendant and the Government waived any appeal of a sentence within that range. Accordingly, the sentence shall be reduced to a total of 108 months.

## CONCLUSION

For the reasons stated above, it is this 31st day of October, 2025, hereby ORDERED that:

1. Defendant's Motions to Reduce Sentence (ECF No. 302; ECF No. 314) are GRANTED;

2. Day's total term of incarceration is reduced to a total of 108 months.

3. The Clerk is DIRECTED to mail a copy of this Memorandum Order to counsel of record and Defendant Day.

/s/
_____
Richard D. Bennett
United States Senior District Judge